Good morning, Your Honor. Frank Weiser appearing on behalf of the Appellants Patel. Good morning. First, I'd like to thank the Court for accommodating my holiday schedule and giving me this chance to, instead of yesterday, having to, not having to argue yesterday. All right. There were some, two FRAP 28-J letters that were faxed to the Court, one by counsel for the City of Los Angeles, and I also sent the Court a FRAP 28-J letter on Monday. And I'd like to address that first. That specifically deals with the takings claim and some recent U.S. Supreme Court decisions that have come out since the briefs were completed. The City has cited Kalingel v. Chevron, which is a U.S. Supreme Court case that came out last term, and essentially eviscerated the takings test in which you can invalidate a regulation under the substantially advanced legitimate governmental interest standard, which was a standard that this circuit had long adopted in facial takings and, of course, also in applied takings. And I agree with the City that that is no longer the law, not only, of course, in this circuit, but throughout the country. So our argument as far as any regulations here that are in place that are not substantially advanced in legitimate governmental interest simply has no place in terms of our takings claim. What I would like to point out, though, is that the Lingle case specifically said it was not changing the other tests, and in specific, the Penn Central Transportation Company v. City of New York test, which is a multifactored test in which you look at the way the character of the regulation, the economic hardship upon the person who is burdened with the regulation, and the reasonable investment-backed expectations of the owner who is subject to the regulation. And what we cited in our briefs was the Garneau v. City of Seattle case, which is a case that Judge O'Scanlan authored in which there was a facial takings challenge against a regulation in the City of Seattle. And the Garneau case specifically applied the Penn Central factors. Roberts. Counsel, if you're going to talk about the facial takings claim, let's talk about what is it specifically that you believe constitutes a facial taking here? Verrilli, Jr. The issue of the 29-day rule, there's a specific prohibition here in which is directly contradictory to other city standards or city municipal codes in terms of not being able to rent to anybody beyond 29 days. And that, we believe, constitutes a economic burden both on the landowner, his reasonable- Tell me what the 29-day rule is. The 29-day rule is, is that normally one can rent without any time limit beyond one can rent beyond 30 days to anybody who stays, who comes to rent at the hotel. The city imposed regulations saying nobody could rent beyond 29 days.  And what paragraph in your complaint is that addressed in? Verrilli, Jr. I don't think I specifically alleged the specifics of the regulation itself. I didn't see it in here. So how is the district court supposed to know that that's part of your facial taking claim if it's not pled in your complaint? Well, under notice pleading standards, it would seem to me that all we have to do is give notice of the ultimate facts that we are making a facial taking claim. And that is ultimately to be determined in the discovery section. Although what I did see in here was an argument that the, that there was no, that there was no public purpose here and you had a facial taking claim because this was done with the intent of driving plaintiffs. This is, I'm talking, this is paragraph 20 of your complaint. Driving plaintiffs out of business and transferring their property along with other properties to a private developer. That's correct. That's the private takings claim. What's the evidence on that? There's, the city has been developing property. What evidence do you have? We have evidence that Tom Gilmore, he's a developer who's converting a lot of the apartment buildings, hotels to condominiums and lofts for people to live in the downtown area. They're trying to renovate the downtown area. A lot of the poor people are being pushed out. There have been a lot of articles, I think, recently in the L.A. Times that there's been a longstanding, over the last four or five years, the city has developed a plan here that they are essentially going to put these properties out of business and convert the downtown area. And we believe Mr. Gilmore is one of those developers. We believe there are other developers. We believe Gilmore in particular. Well, I mean, they're getting a drop over to USC to see my grandkids over there. And I grew up in this city, and I was surprised at how nice it is down in that area. And the new apartments are going up and Reynolds and the lofts and all the rest of it. But that doesn't mean, for purposes of the takings clause and as far as the constitutional standards, the city may have a lofty goal in terms of doing that. But if they're taking property from A and giving it to B for the sole purpose of transferring it to B, that can violate the takings of the public use clause of the takings clause. No, no. I mean, it's a B buys the property, and then B either might tear it down or they might renovate it. They might make lofts out of it. But just simply for the purpose of putting out one business owner and putting in another business owner, I believe that violates longstanding standards here. I believe armadares v. Penman. Kennedy. Well, if they're doing that, it's the market. Isn't that why your clients purchase these properties? They're waiting for them to go up in value and sell them. But I think that would be their decision of whether they're going to sell them or not. The city is not exercising an eminent. What's the city doing? The city is not exercising an eminent domain power here. This is not an issue like Kelo versus the City of New London where you have a plan What's the city saying? The city is saying that, you know, these two hotels, there's all kinds of drug dealings and prostitution. And, you know, one period, one place, there were six dead bodies that appeared. And so they're trying to clean that up. But these are the we're in a procedural posture of the 12b-6 motion. And at the administrative level, those facts were absolutely disputed. You have to understand that the Pell Counsel, how do you know that this was decided on 12b-6? Well, the order is The district court recites that the city argued that it was a 12b-1, 12b-6 and abstention. And the district court recites all of those and then simply says it's dismissed. How are we supposed to know what's blocked here? The order itself actually doesn't talk about abstention. The order itself says that the city's motion The order didn't talk about anything as far as I could tell, did it? I believe what the order indicated Alternative for this Court to abstain, that's abstention. It was 12b-6 over 1. That's correct. The order was silent on that. So it does recite both 12b-6, 12b-1 and the abstention doctrine. And then simply says the motion to dismiss is granted. That's correct. So we don't really know whether the district court had in mind, for example, on your takings claim, whether it was a 12b-1 or a 12b-6 or whether it was abstention. There was no Are there different consequences to your client as to whether it's does it make a difference to your client whether it was dismissed on 12b-6 or 12b-1 or abstention? Sure. I mean, if it's 12b, if it's abstention, then my argument would be that what the district court should have been doing was staying the Federal claims and remanding the State claims to State court. And as I read the order What was granted here was the motion to dismiss without leave to amend. The granted line doesn't refer to the alternative request to abstain. Well, yes. The city attorney prepared it. So they don't tell us what it is. Let me get up there again. As I read the order, the order was so broad that I read it to mean that it was You knew you were out of court. That's right. And basically, even the State claims were not remanded to State court, were not dismissed without prejudice. We were just out. And even if one takes the 12b-6 and 12b-1 motions as well taken, the 1094.5 administrative mandamus claim is a substantial evidence standard. There was no administrative record. It's not a trial on administrative records. At the very least, what the court should have done is just simply dismissed without prejudice or remanded to State court and let the State claims play themselves out in State court. Which claim are you referring to there? Pardon me? This last reference. What claim are you referring to? The State claims for 1090, California Code of Civil Procedure 1094.5, that's administrative mandamus. Which do you recall? Which count? Sure. That was? That was the fifth claim for relief and the sixth claim for relief. The sixth claim for relief went hand-in-hand with it. That was the inverse condemnation claim under the California Constitution. I do want to point out as far as the letter that I did fax to the court, the San Remo case, because I think that raises a rather interesting issue. Assuming that the facial takings claims under the substantial advance, the legitimate interest test is no longer applicable, as we must hold now. Assuming that Garneau doesn't apply, the facial regulation, facial challenge under Garneau doesn't apply. Even an as-applied challenge now has been put into question by the Supreme Court. The special concurrence in San Remo, the late Chief Justice and Justices O'Connor, Thomas and Kennedy, had called into question whether Williamson County was even properly decided. And basically, as I read the concurrence, Chief Justice Rehnquist indicated that under longstanding principles of Patsy v. Board of Regents v. State of Florida, a 1982 U.S. Supreme Court case, there's never been an exhaustion of administrative remedies as a prerequisite to file a 1983 action. So it seems to me that when you put that together with the fact that any of these claims are subject to a procedure of due process, it is, but for a 1983 action, at least if you're talking about a due process claim, then we are concerned as to whether you have exhausted, whether you've taken advantage of all of the mechanisms that the State offers you as a way of giving you due process. Well, I'm talking, first of all, only on San Remo only dealt with a taking claim. And I will get to the procedure of due process issue. But the San Remo case raises, very interestingly, in a footnote, and I believe it's footnote 2, that under Federal law, the concerns that the special concurrence had was that under California law, and I think they cite in footnote 2 a case called Brnerich v. City of Del Mar, and that case says that under California law, you can't even present your Federal takings claim to a State court here in California. You're bound by the State law rules of first overturning the regulation, and then if you overturn the regulation, you can proceed for damages under the State constitution under Article I, Section 19, inverse condemnation. And our contention is that that violates the Penn Central test. The Penn Central test is a weighing of factors. Sure, if you can't overturn the regulation and the regulation is a legitimate exercise of the government's police power, that is one factor among several factors that the Court has to take into consideration whether there's been an as-applied taking. The other factors are, is there an economic burden or what the economic hardship is on the owner, and the other one, what the owner's reasonable investment-backed expectations are. Kennedy, but we're not there yet, are we? We're not there at a taking. As far as an as-applied, we had we had a We're there, we're there on this nuisance theory that the city has advanced. The city has imposed regulations that the owner has to adopt and has to, has to Let me, let me, is this a hotel? Yes, it is. Okay. Do the people there pay a hotel tax? First 30 days. First 30 days, they pay a hotel tax. That's correct, TOT. All right, and, but if they stay over 30 days, they don't pay a hotel tax. They can't stay over 30 days. That's one of the conditions. They can't stay, but I mean, might not. And these people are poor people who can't, don't have other alternative housing. Now, the way it stands, this is a hotel. And if someone comes in there and they spend a day, they pay a hotel tax. If they spend a month, the hotel tax is paid. And if they're beyond a month? There's no hotel tax. No hotel tax. Correct. And that applies to any hotel. Correct. But this hotel or these two hotels cannot have people staying over 30 days, whether other hotels can. This hotel has to accept certain conditions of how it can operate. Those place a burden on the owner. Now, those are factors that have to be considered under Penn Central as far as what the, for example, if the city is saying that, okay, we are doing this because we want to abate the nuisance here of, as the Court said, prostitution and drug abatement. Prostitution and drug abatement goes hand in hand with short-term tenancies. It doesn't go hand in hand with long-term tenancies. If an owner bought a hotel. I have no experience in that, so I have to rely on yours. Well, I do a lot of work in the hotel and motel business, and I've been published in that area, so I have a little bit of knowledge on that. But if an owner buys a property with the expectation that his reasonable investment backed expectations are is that he's going to be able to rent these units out for long-term tenants, and now he's denied that, and it doesn't have any reasonable relationship to the abatement problem that the city is trying to address, then that would have to be a factor that's considered under Penn Central and what the economic burden is on them under Penn Central. The point is, the Penn Central is a weighing test. I'm not saying how you weigh it at this point. But the California rules here don't even let you get to the Penn Central factors. What California says is you have to overturn the regulation first. If you don't overturn the regulation to show that it was an illegitimate exercise of the police power, you never even get to the issue of damages. So you don't get to the you don't basically what the California standard is. The California standard has eviscerated the Penn Central factors. That's why we're saying that the California standard is an inadequate remedy and doesn't meet the standard under the Just Compensation Clause of the Fifth Amendment. When you add that with the San Remo case and the fact that the court has or at least What are these hotels, they're near Alvarado Street? They're in the downtown area. Alvarado? It's more towards Union. Union? Union, towards Figueroa and Union. They're on the West Bank. That's correct. That's correct. Figueroa and Union? It's in between Union. I believe Stewart is on Union. I believe Holland is on 7th Street a few blocks away. They're in Union, so they're kind of close to, not too really far from the Staples Center. It's in the downtown area. That's correct, Your Honor. Addressing what Judge Bivey indicated as far as the procedural due process and the exhaustion remedies issue, I agree that in general there's an exhaustion requirement if the Parrott v. Taylor test is applied. But Parrott is only applied under very, very limited circumstances. That's only when the administrative machinery couldn't predict the due process violation. This circuit going back to 1986 in an en banc case called Pia v. McDougall, and then I believe Meredith v. Mackey. I mean, there's a line of cases here has not, has consistently, and I believe the Serrano-Gasco case, although we cited it as a First Amendment case. But all those cases say that we don't apply Parrott if it's during the normal course of the administrative process and the due process violation could have been predicted. That, where the due process violation has to be exhausted through state remedies is where you have some negligence, let's say, through a lower level employee that the higher officials just could not have known about or could not have predicted. That didn't happen here. This went up, this went up to city council. I only have two minutes left. Finally, I do want to emphasize the Federal Fair Housing Claim is a disparate impact claim. It's not just the Patels. We have poor people living in these hotels. And do the Patels have standing to raise the claims of their clientele? Under Federal Fair Housing Claim, sure. It's directly allowed by statute under 42 U.S.C. 3604B. You've raised other claims here as well, though. That's correct. Your equal protection claims, for example. That's correct. But the equal protection claim is not being raised for the tenants. The equal protection claims are being raised for the Patels themselves. But the statutory claim under 3604B, the Federal Fair Housing Claim, is being raised also for the tenants. And I believe the 29-day rule does put a substantial impact on people who can't afford any alternative housing. But you didn't plead the 29-day statute any place in the complaint? No. I based it.  It's a violation of due process, it's a violation of equal protection, and it's no displeasing. We're not subject to a heightened pleading standard. The issue of what constitutes the particular violations is subject to the discovery process. And we'll wait a year. That's the ideal situation, but it doesn't always work that way. I understand. Good afternoon. May it please the Court. My name is Basha Jankowski. I represent the City of Los Angeles. I would like to just start with the notion that this is a very simple zoning matter that's being turned into a Federal case. And I think Justice Progerson very aptly noticed that there is some context to why we're here, which is there are many complaints about crime in these areas. The City has a nuisance abatement ordinance, which it uses to make the operation of the hotels safer. The fact that the City imposed conditions, we don't know what they are according to the appellant's First Amendment complaint, has nothing to do with the myriad of constitutional violations the City is accused of. But just specifically, because you have asked regarding the takings argument, the fact is however appellants want to phrase it, they still need to go and avail themselves of the state compensation procedures, that's well-documented law under Williamson. Therefore, that cause of action was dismissed pursuant to 12B1. And I will address Justice Bybee's comment on the actual order. The order was to grant the motion to dismiss. There wasn't anything really said on the record, therefore, if this was an abstention, it would have been grant the motion to dismiss and abstain. There wasn't the abstention because once the motion to dismiss was granted, there was no need for the abstention. So on what grounds did the District Court dismiss this? All on 12B6, not on 12B1? Well, the City's motion to dismiss alleged the takings on 12B1 and 12B6. The rest of the causes of action were contested on 12B6 only. The only one to which you argued 12B1 was the takings claim. That's right. But in terms of the procedural due process claim, as again, you pointed out, there is a pre-deprivation process that the City uses in the nuisance abatement cases. Before you get back to that, I just want to make sure I've got this straight. So as to the takings claim, is it your view that the District Court dismissed this on 12B6 grounds or on 12B1 grounds? 12B1, that was the... And how do we know that? Because you argued it in the alternative. You argued 12B1 and 12B6, right? Right.  12B1 grounds and not 12B6 grounds. And how are we supposed to figure that out? Well, the 12B1 was the argument about the ripeness. And that was primarily the argument... The District Court didn't say anything about ripeness because he didn't say anything about anything, did he? He didn't. So we really don't know whether he decided on 12B1 or 12B6 grounds, do we? No. How about the one... But I would say he didn't err in either case. How about the without leave to amend part? Was that part of the original motion or was that something added by the District Court? The original motion was just the motion to dismiss. One of the things that seemed remarkable to me is that almost always a 12B6 motion you will have leave to amend. And this order makes a point of saying without leave to amend in a way that looks like the title of the motion, but I didn't think that's what your motion was entitled. So... I think to put it in context in this case, we had filed, the city had filed the motion to dismiss, and instead of arguing that motion, appellants filed a first amended complaint based on the motion to dismiss. However, the first amended complaint really didn't change anything the city addressed in its motion to dismiss. It mainly just added two causes of action. Therefore, appellants had the opportunity in their first amended complaint to address these arguments and really didn't. And therefore, the without leave to amend, I think is appropriate considering... That they had already amended. That's right. In other words, they had another chance and they didn't take advantage of it. That's right. Again, I just want to distinguish the Carpentria case, which was cited too in the briefing. That case had facts such as the owner, property owner in that case, wanted to build a private polo field and also build a residence. And that's a Ninth Circuit case, 2003. And that particular case had equal protection due process, a lot of 1983 violations, which the court said shouldn't have been dismissed on a 12B6 claim. But that case had a myriad of information as to why the motion to dismiss shouldn't have been dismissed at that point, which is he alleged 16 similarly situated property or nursery or polo fields were treated differently than he was. He was required by the city to have a CUP to build the polo field. 16 other people didn't. He alleges that a council member, that he had filed suit against a neighborhood association, which supports a council member. He alleged that when he went to the planning department, a planning associate told them that they had a go-tough policy on him because of all the things, I guess, he had done in terms of criticizing the city government, et cetera. And in that case, you understood the context of the violations. In this case, there is no context. There's basically, I think, under Rule 8A, which states that there needs to be a short and plain statement of the claim showing that the pleader is entitled to relieve, that the appellants haven't met that standard. They haven't adequately pled any of the causes of action that would enable the court to make that decision. Well, they do allege, I think, with paragraph 20, it was briefly referred to during appellant's argument, allege a private taking or a taking for a private developer's purpose. Again, I would say that, first of all, the context, the appellant said is that the city is acquiring the property. We're not acquiring the property. What is the fact to show that we're buying the property? We're not buying the property to sell to a developer. There isn't any evidence or any facts or any context to show that. All we did was impose conditions on our hotel. The allegations could be made that you're trying to drive these people out of business or diminish the value of the property so as to make it easier for someone else to come in and acquire it. Well, again. I don't think it's true. I know, but again. I'm not sure that it's fair to say that there are not allegations in the complaint that speak to those issues. Similarly, there's an allegation that, again, not to say that it's true, but an allegation that this is targeted at these owners because of their involvement in resisting the city's imposition of conditions on other hotels in the downtown area, so on and so forth. Now, that's not a very detailed sketch by any means, but it is a suggestion of something that could support a retaliation claim. But, again, I don't think the pleading standard isn't a suggestion. It has to be a short and plain statement showing why they were entitled to relief. So is this complaint dismissed on pleading deficiency grounds? The most of the causes of action were. Most of the argument I read in the briefs are all about substantive law. And now you're telling me this is a pleading deficiency. Well, if it's a pleading deficiency, then certainly the parties ordinarily have an opportunity to amend in response to the specific defects identified in a court's order, which it's no fault of yours, is extraordinarily unspecific as to what the problem is. So. But in any case, even without the smallest modicum of facts, additionally, the constitutional or the requirements for the actual cause of action, appellants haven't met in a lot of cases. In the 1985, there's no allegation of conspiracy, which is necessary to have that cause of action. The Fair Housing Act cause of action, they have to allege a significantly adverse or disproportional impact on persons of a particular type. They've said tenants. Well, we don't know who those tenants are. I mean, some of them could be protected. Some of them couldn't be. They did recite elsewhere in the facts that they, that these were largely minority tenants. Isn't that sufficient? You have a hotel that has a, obviously doesn't have people who live there. So the people change all the time. I mean, I guess you can allege. But we have alleged that the, that they are largely minorities. Okay. But even so, I think they have to allege that there's a significant adverse or disproportionate impact on them. And they haven't alleged that they've just said that somehow, if I look at the specific language that, that the effect of discriminating against intended natural tenants and occupants based on race, color, or national origin has caused a significant disparate effect on such tenants with respect to the terms, conditions, and privileges of the sale or rental of a dwelling. But again, that has to be a significantly adverse or disproportional impact. The fact that we have asserted to put conditions that make the property safer, how there's a disconnect there on how that prevents them from granting the dwelling unit. They're not closed. They're just operating under conditions. I think there needs to be a little more to connect the context of this case. I don't think the pleading should exist in a vacuum. And we're dealing with different things here. Now, I understand what you're saying. And indeed, with regard to the Federal Fair Housing Act claim, we've got a recitation discrimination without indicating who the discrimination is against. Although we can probably infer that in the neighborhood we're talking about, you're dealing with minority populations. But it's not here. And so you may fairly say this pleading isn't specific enough. But if it's purely a pleading problem, and that's a potentially solvable problem by better pleading, the argument that I understood as being made is a more substantive one. But a substantive argument is hard to make on a Rule 12 motion. I mean, that suggests at some level the argument I heard or I thought I saw in the briefs essentially assumed the correctness of what the zoning administrator had found. And that may be right. But that suggests a Rule 56 kind of determination, one where the facts are before the court. And on a Rule 12 determination, I'm not sure it's fair to say that the facts are before the court yet. So that's why I get I get mixed up. Is this a pleading determination by the district court saying the pleading is not Is it a substantive determination? But if so, it seems premature because there's no indication the court treated this as a Rule 56 or that the plaintiff was given an opportunity to deal with Rule 56. Again, it's not your fault that the district judge chose not to tell us anything, but it gets awfully difficult for us to evaluate because I'm not sure what it's supposed to be. That's true. I think that the fact is that after Judge Reel said the motion's granted, that he asked, he asked, asked you to prepare an appropriate order and launch it with the court. Yes, he did. And so, so you, did he say granted without leave to amend? I believe he did, honestly. I hope you'll have a transcript of it. I believe. He probably did. He did. Yeah. I'm almost sure he did, although I would just have to say again, though, on the leave to amend, the point I think was that this was a first amended complaint that we were arguing about, that the constitutional deficiencies, as well as the absence of facts in the, in the first, the first complaint was repeated on the first amended complaint. And therefore, I would argue that the appellants had a chance to address those, both the factual issues and the plea and the constitutional issues and did it. And I think that when you look at cases, a 12B6 case like the Carpinteria case, that had so, that had a lot of context for why the, the appellants were claiming that they were discriminated against or that there was an equal protection violation or that there was some sort of a due process violation, which can't be argued here. They had noticed, they had an opportunity to present the evidence at the hearings. I think that. Speaking of the zoning administrator's hearings or, or the district court's hearings, presentation of evidence. I mean, was there evidence taken by the district court? I assume you're. No, I, I attached evidence to the motion to dismiss because the appellants had alleged that they did not receive notice and there was clear, a clear contradictory evidence in the record, which are public records to show the district court that they did get notice. They were at the hearings. There's a certification that notice was mailed out. So I think the fact that they pled, they had no notice, the court has to consider that in context too. I think those types, if they contradict or, or have some value that they are properly looked at by the district court, because even though you have a pleading, which is alleging many different, many different constitutional violations, the decision from which it emanates, you know, omitting that entirely, I think puts the whole case in a vacuum. And if you haven't pled any facts and in some cases don't even allege the constitutionally what's required, then it's impossible to, I think, make a reason decisions and do justice. All right. Unless you have any other questions. I, I think we're fully argued. Thank you. Counsel, once, once you were on notice that the city intended to object to your complaint and you filed a First Amendment amended complaint, why didn't you correct some of the deficiencies? We, we did, Your Honor. Well, what we did was, is we added more facts. It's not true that the First Amendment complaint did not add facts. There are very specific facts in the First Amendment complaint, and I believe that's in our excerpts of record. I'm only looking at the Balabai-Patel now one, but it's the same for Hasmukh-Patel. Paragraph 6. Let's, let's take, for example, your Section 1985 complaint. That there you did not allege a conspiracy, is that correct? We didn't allege the element of a conspiracy other than the fact that we did allege that they were members of a protected group. Okay.  But you didn't allege, and that's different. You didn't allege a conspiracy. Well, we, well, well, we indicated that there was bias and that there was discrimination. Did you call it a conspiracy any place in the complaint, Counselor? We didn't, we didn't allege the specific words conspiracy. Okay. But that, but that is what a 1985 action is. But, but if that's in fact what the Court is saying that must be alleged, that is simply a boilerplate allegation. One, one question I have here, Counselor, is more than what? A boilerplate allegation. So why didn't you put it in? You've been doing this a lot, haven't you? My, my understanding of the notice pleading standard is we have to plead the ultimate  I know, I know. And I don't see, and I, and I've never seen why we are being held to a standard where we are in fact being held as if we were at a summary judgment level or we were at a level where we have to prove the evidence specifically. We're just a fairly, fairly generous counsel in allowing people to amend complaints. You've already filed an amended complaint here. So if, if we thought that there were deficiencies here, what is it you want us to do? Well, if there were deficiencies, assuming argument, then I would ask that it be remanded to the district court to allow me to amend it subject to the bill a second time. A second time. Because I don't believe that there is no possible set of circumstances or facts where we could not allege the deficiencies that the city alleges. But I do want to point out here, for example, the procedure due process. Let's talk about conspiracy. What evidence do you have that, I mean, you just file a complaint without any evidence? There are four or five motel hotels that I personally have been involved in and the city themselves have attached related cases that have come before Judge Riall in which the city has, has basically tried to drive these people out of business. Some of them are the same. Balobai Patel is one of the same appellants, is the appellant who is in one of those cases. There was another one in which this Court, since it is a related case, it's a memorandum decision, I'm not saying it's binding on the Court, but the Alfredo Wong case against the City of Los Angeles in which this Court, not this Court, but the circuit remanded, vacated the dismissal and remanded. So what's the conspiracy? Well, there's a plan in the downtown area to put these hotels out of business. For better or good. Where is that plan? There is a plan to redevelop the area, that these hotels are no longer of any use to the city, to put developers in there. There's a whole redevelopment plan. There's a redevelopment, but they're not using the redevelopment process. If the city was coming forward and saying, we'll buy your property. Is there a redevelopment plan that says we've got to get rid of these hotels? Pardon me? Is there a redevelopment plan that says we've got to get rid of these hotels? I don't know if it's a redevelopment plan saying to get rid of the hotels. There's a redevelopment plan in the downtown area to renovate the downtown area, convert many of the properties there to functional uses, to allow business people to come there, live there, and. To make the downtown area more attractive. And I'm not. It's not a conspiracy. And I'm not saying that that is a bad goal, but when you do it and you exercise the police power, instead of giving offers to property owners and saying, okay, we'll buy your property at fair market value, but then bring trumped-up charges saying that your property is operating as a nuisance and you're going to be closed down, that's a conspiracy. There were no arrests for prostitution or drugs or whatever. Those are disputed facts. They were disputed administrative. Were there or were there not arrests there? The contention at the administrative level, these hotels had been operating for some 10 years. We're not talking about business owners who had no track record. These were hotels that had been there for some 10 years, never had a problem with the city. Stewart Hotel never had one problem with the city until the city started this program. Had there been arrests there? In the area, but not necessarily that the hotel was the problem. Nothing connected with the hotel. Not connected that the hotel is the cause of the problem. The area is not a great area. Nobody's denying that. It would be a good area, yes. But it's not. But that doesn't mean it's the hotel or the owner who is responsible for the area's problems. No, no. But you're saying that the people, that no police have come on the property and had to arrest any residents of that hotel. The problem we had here, and we alleged it in the complaint. Can you answer that question? And what I'm saying is. Answer the question. Yes. Answer the question. I believe not. And the reason I say that. Okay. I can't answer to say 100 percent, but the reason why I say that and it's part of the allegation. We were given a redacted evidence. We were given a bunch of police evidence here that's saying, okay, there were 150 calls here from surrounding area and from the property. And then you're given evidence. You're not given the name of the victim. You're not given the name of who called the police. You're not given the name of where it emanated exactly to be able to check and find out to verify if it's true or not. So how is the – and we allege that. We specifically allege it. Our procedure due process claim was not that we didn't get notice. Of course we got notice. We attended all the hearings. Our procedure due process claim was that we didn't have a meaningful opportunity to rebut the evidence. We weren't given the type of evidence that would allow us to say, yes, the city is right, the city is wrong. And we contended that the hotels are not the problems in the area. The area is the problem. So that was part of our claim. We contended that there was a bias in the administrative process. In fact, at one of the council hearings, I believe it was the Plum hearing, one of the council members said to me, for better or for good, said to me, well, your clients are – I think I asked for a companion to one of the clients, one of the Patel clients, I think it was Hasmukh Patel, and Jack Weiss, the councilman, said, well, your client's a slumlord while he's vacationed in India. Ed Reyes, before this – these conditions were imposed, held a news conference in front of the Stewart Hotel with Rocky Delgadillo claiming – and it was in the L.A. Times – saying we're going to prosecute these properties and this property is one of our problem properties. Well, Mr. Reyes was on the Plum committee hearing. He was on the city council hearing. I don't think that comports with the appearance of fairness that one expects of an adjudicator. It certainly doesn't – and it seems to me it's directly contradictory to this circuit's opinion, Stivers v. Pierce. So – and we did allege – That's part of your conspiracy. Piercing. And we did allege the evidence issues. We said we're disputing the evidence. We're at a 26 level. We're disputing the evidence. We didn't get the evidence from the city. And the city rushes you through a hearing. You get – you go to a Plum committee hearing, three minutes. It's basically a show for the city to be able to say, okay, we're putting these so-called problem properties out of business. You go to a city council hearing. I've been – as the Court said, as Your Honor indicated, I've been through a lot of these nuisance abatement hearings, for better or for worse. And what you have at a normal city council hearing when they're going to impose conditions or whether they're going to revoke somebody's license is you get a full-blown hearing. Now, you don't have to have all the strictures of due process as you would have in a court, but you get more than three minutes where they just rubber stamp a zoning administrator's decision. Those are specifically alleged in the First Amendment complaint. So it's not fair to say that we didn't allege specific facts. Now, that's also even as to the Federal Fair due – Federal Fair housing claim. We specifically said, in paragraph 16 of the Bababai Patel complaint, that's at page 22 of the excerpts of record, the residents of this hotel caters to and is substantially comprised of low-income and minority residents who cannot afford affordable housing. And the plaintiffs are Asian Indian and have a minority status protected under Federal law. It seems to me that the affordable housing issue is part of the disparate impact here. Are there people living in there who are on the county vouchers? Absolutely. That's the whole issue now with the city and their program of what we're alleging, trying to drive out the minority poor from this area. There have been a series of articles. I know it's not before the court, but I think it's public record in the LA Times just over the past week or two about the Skid Row area and the poor people who are there. The fact that there's a shortage of affordable housing for these people, these are hotels for better or for worse, no matter what the court's perception, are providing that kind of housing. And to impose a 29-degree limit. Breyer, what do you mean, no matter the court's perception? Well, what I meant was, is that the court seemed to be indicating, Your Honor seemed to be indicating that these were problem properties which we dispute. But these are properties from a federal fair housing standpoint. When you impose a condition that nobody can live there for more than 29 days, it doesn't just impact the patels, it impacts the people who live there. Do you know how many homeless people I have in shelters that I've set up in this area? Do you know how many I have right now as we talk to each other? Over 3,000. So, you know, I have sympathy for what's going on. So, don't assume I know anything about, or pre-judging anything. I'm just asking you questions. I don't, you know, you put a lot of this stuff in, you'd be better off putting a little bit more in there. I understand, Your Honor. You know, you're with Judge Rio. You know that. I understand. All your cases are going there, aren't they? That's the point. The city was able to get everything moved over to Rio. And I can tell the court. These go there under the low number rule. Well, the argument with Judge Rio was, anything more to say in your papers? And you say case dismissed. Well, he treats everybody that way, so he's, you know. But these are hotels that are not, these are providing a function for, and providing alternative housing for poor people. And as I said, there is, there are disputed facts here about whether, in fact, the evidence supports the imposition of the conditions. You got one on Union Avenue? Yes. One is on Union, 718 South Union. Where? That's, you're seventh in Union. Is that north or south? I believe it's South Union, Your Honor. South Union. With that, I would dismiss. Thank you. All right.
judges: Pregerson, Clifton, Bybee